**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 10-cv-02562-REB

SANTANA PEÑA,

      Applicant,

v.

LARRY REID, Warden,
COLORADO DEPARTMENT OF CORRECTIONS, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

**Blackburn, J.**

This matter is before me on the ***pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** ("Application") [#7][1] filed November 4, 2010, by Applicant Santana Peña. Respondents have filed an **Answer to Application for Writ of Habeas Corpus** ("Answer") [#20]. Applicant has not filed a Traverse. After reviewing the pertinent portions of the record in this case including the Application, the Answer, and the state court record, I conclude that the Application should be denied.

### I. BACKGROUND

Applicant is challenging the validity of his conviction in El Paso County District Court case number 02CR1699. The following statement of facts is taken from the opinion of the Colorado Court of Appeals in Applicant's direct appeal.

---

[1] "[#7] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

> In April 2002, [Applicant], his wife, and their eighteen-month-old daughter moved from Texas to Colorado Springs. [Applicant] and his family checked into a local motel, and shortly thereafter, [Applicant] obtained a job with a landscaping company.
>
> Approximately three weeks later, in the early morning hours of April 27, 2002, [Applicant] met Luis Rivera, who was staying in the motel room next to [Applicant] and his family. Between three and four a.m. that morning, [Applicant] and Rivera ingested cocaine together in [Applicant's] motel room. Rivera then returned to his room until approximately six a.m., when he agreed to give [Applicant] a ride to work. Instead of driving to [Applicant's] place of work, Rivera drove to the victim's house. According to the prosecution's evidence, [Applicant] exited Rivera's truck and entered the victim's house. He came out of the house with the victim, who was clothed only in a blanket. [Applicant] shot the victim twice in the head, killing him.
>
> A short time later, Rivera called 911 and notified the police of the murder. He told the police the location of the victim's body, that [Applicant] had shot the victim, and where [Applicant] was staying. The police arrested [Applicant] at his motel room.
>
> [Applicant] was charged with first degree murder after deliberation, conspiracy to commit first degree murder, and two counts of crime of violence. The conspiracy count and its associated count of crime of violence were later dismissed. [Applicant] was convicted by a jury after a trial on the remaining charges and was sentenced to life in prison without the possibility of parole.

*People v. Pena*, No. 03CA0923 (Colo. App. July 28, 2005) (unpublished decision) [#12-6]. According to Applicant, he did not shoot the victim. Instead, he remained in Mr. Rivera's truck when they went to the victim's house, and Mr. Rivera shot and killed the victim.

On direct appeal from the judgment of conviction, the Colorado Court of Appeals rejected three claims raised by Applicant and remanded the case for further

proceedings regarding a Fourth Amendment claim.  *See id*.  With respect to the Fourth Amendment claim, the Colorado Court of Appeals provided the following instructions:

> On remand, if the trial court determines that the search warrant was not based on the illegal search and that the independent source doctrine applies, [Applicant's] conviction stands affirmed, subject to appeal on that issue. . . .  If the trial court determines that the search warrant relied on information obtained from the illegal search, [Applicant's] conviction stands reversed and [Applicant] shall have a new trial, subject to an appeal by the People on that issue.

([#12-6] at 28-29.)  On May 8, 2006, the Colorado Supreme Court denied Applicant's petition for writ of certiorari seeking review of the decision of the Colorado Court of Appeals in 03CA0923.  (*See* [#12-9].)

On remand, the trial court determined that the independent source doctrine applied and rejected Applicant's Fourth Amendment claim.  Applicant filed an appeal from the trial court's order on remand and the Colorado Court of Appeals affirmed the order and the judgment of conviction.  *See People v. Peña*, No. 07CA0324 (Colo. App. Jan. 22, 2009) (unpublished) [#12-11].  The Colorado Supreme Court subsequently denied Applicant's petition for writ of certiorari seeking review of the decision of the Colorado Court of Appeals in 07CA0324.  *See Peña v. People*, No. 09SC197, 2009 WL 3535418 (Colo. Nov. 2, 2009).

Applicant asserts three claims in the Application arguing  (1) that the trial court erred in denying a challenge for cause to a prospective juror; (2) that the trial court erred in failing to instruct the jury on voluntary intoxication and its relevance to the element of intent; and (3) that the trial court erred in responding to a jury question during deliberations without counsel for either party being present.  Applicant's claims in this

Application are the same three claims rejected by the Colorado Court of Appeals in appeal number 03CA0923.

## II.  STANDARD OF REVIEW

I must construe the Application and other papers filed by Applicant liberally because he is not represented by an attorney.  **See Haines v. Kerner**, 404 U.S. 519, 520-21 (1972); **Hall v. Bellmon**, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I may not be an advocate for a **pro se** litigant.  **See Hall**, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Applicant bears the burden of proof under § 2254(d).  **See Woodford v. Visciotti**, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  **Harrington v. Richter**, 131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  **Id**. at 784.  Furthermore, "[w]hen a federal claim has been presented to a state court and the

state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 784-85. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 784. In other words, I "owe deference to the state court's result, even if its reasoning is not expressly stated." ***Aycox v. Lytle***, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

I review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). **See Cook v. McKune**, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question I must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. **See Williams v. Taylor**, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or

> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

***House v. Hatch***, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  ***See id***. at 1018.

If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  ***See Williams***, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent."  ***Maynard*** [***v. Boone***], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting ***Williams***, 529 U.S. at 405).  "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.'"
> ***Williams***, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts.  ***Id***. at
> 407-08.  Additionally, we have recognized that an
> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.

***House***, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  ***See Williams***, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." ***Maynard***, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

***Richter***, 131 S. Ct. at 786 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." ***Cullen v. Pinholster***, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." ***Maynard***, 468 F.3d at 671; ***see also Richter***, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

7

>   comprehended in existing law beyond any possibility for
>   fairminded disagreement.

***Richter***, 131 S. Ct. 786-87.

I review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).  ***See Romano v. Gibson***, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  ***Miller-El v. Dretke***, 545 U.S. 231, 240 (2005) (quoting ***Miller-El v. Cockrell***, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  ***See Gipson v. Jordan***, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III.  MERITS OF THE CLAIMS

**A.  Claim 1**

Applicant first claims that his Sixth Amendment rights were violated when the trial court erred in denying a challenge for cause to a prospective juror.  Applicant contends in support of this claim that the trial court denied a defense motion to strike a juror for cause even though the juror knew the police investigator and was biased in favor of the

prosecution. Although not mentioned by either party, and also not addressed by the Colorado Court of Appeals, Applicant used a peremptory challenge to excuse the allegedly biased juror after the trial court denied the challenge for cause. (*See* State Court R., Trial Tr. 1/7/03 at 155; *see also* [#12-3] at 19.) Applicant does not argue in his first claim that any of the jurors who actually determined his guilt were biased or impartial.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant the right to an impartial jury. *See Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). If a "juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," he should be dismissed for cause. *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (internal quotation marks omitted), *see also United States v. Scull*, 321 F.3d 1270, 1278 (10th Cir. 2003). However, in deciding whether the jury was impartial, I must focus on the jurors who ultimately deliberated and decided Applicant's fate. *See Ross*, 487 U.S. at 86.

In the instant action, Applicant's constitutional right to an impartial jury was not violated by the failure to dismiss a prospective juror for cause. Applicant cured any constitutional error that may have occurred when the trial court refused to remove the prospective juror in question for cause by using a peremptory challenge to remove her from the jury panel. *See id*. at 88. The fact that Applicant was required to use a peremptory challenge to achieve the goal of an impartial jury does not demonstrate that his constitutional rights were violated. *See id*. Therefore, Applicant is not entitled to

relief on his first claim.

## B. Claim 2

Applicant contends in his second claim that the trial court erred in failing to instruct the jury on voluntary intoxication and its relevance to the element of intent. Applicant specifically argues that voluntary intoxication is relevant to negate the existence of specific intent with respect to the offense of first degree murder. It bears noting that Applicant "did not object to the absence of an intoxication instruction in the trial court." ([#12-6] at 13.) The Colorado Court of Appeals rejected Applicant's claim challenging the trial court's failure to instruct the jury *sua sponte* on voluntary intoxication because such an instruction was inconsistent with the defense theory that Mr. Rivera, and not Applicant, shot the victim. (*See id*. at 13-14.)

Applicant bears a heavy burden in challenging a state court conviction based on an alleged error in failing to give a particular jury instruction. *See Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997). Generally, an error in jury instructions may not be reviewed in federal habeas corpus proceedings unless the error renders the entire proceedings fundamentally unfair. *See id*.; *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973) for the proposition that the question in a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process"); *Thornburg v. Mullin*, 422 F.3d 1113, 1126 (10th Cir. 2005) (stating that the trial court's failure to give voluntary intoxication instruction *sua sponte* is reviewed only for denial of fundamental fairness and due process). Applicant's burden is especially great in the

absence of an erroneous instruction because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." **Henderson**, 431 U.S. at 155.  Furthermore, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Id*. at 154.

"Because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor, a federal court must tread gingerly and exercise considerable self restraint." **Duckett v. Mullin**, 306 F.3d 982, 999 (10th Cir. 2002) (internal brackets and quotation marks omitted).  My "[i]nquiry into fundamental fairness requires examination of the entire proceedings." **Le v. Mullin**, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

Based on my review of the state court record, I cannot conclude that the absence of a jury instruction on voluntary intoxication rendered Applicant's trial fundamentally unfair.  It was undisputed at Applicant's trial that Applicant and Mr. Rivera both ingested cocaine in the hours immediately preceding the murder.  However, as the Colorado Court of Appeals indicated, Applicant's theory of defense at trial was that he did not shoot the victim and that Mr. Rivera did.  Therefore, an instruction on voluntary intoxication, which Applicant argues would be relevant to negate the existence of specific intent with respect to the offense of first degree murder, was not relevant to Applicant's defense that he did not shoot the victim.  Under these circumstances, the absence of a jury instruction on voluntary intoxication was not fundamentally unfair. **See Montana v. Egelhoff**, 518 U.S. 37, 41-51 (1996) (plurality decision finding no

fundamental right under Due Process Clause to present evidence of voluntary intoxication to rebut mens rea); **see also Foster v. Ward**, 182 F.3d 1177, 1193-94 (10th Cir. 1999) (trial court's failure to give unrequested cautionary instruction on accomplice testimony did not render trial fundamentally unfair). Therefore, I find that Applicant is not entitled to relief on his second claim.

## C.  Claim 3

Applicant contends in his third claim that his constitutional right to counsel was violated when the trial court erred in responding to a jury question during deliberations without counsel for either party being present.

> Here, the jury submitted a question during deliberations which stated: "Clarify instruction 15 #3." The court provided the following response: "Answer: Please see the definition in Instruction #13."
>
> Instruction 15 provided in part:
>
> The elements of the crime of Murder in the First Degree are: (1) That the defendant, (2) in the State of Colorado, at or about the date and place charged, (3) with intent, (4) to cause the death of a person other than himself, and (5) after deliberation, (6) caused the death of that person or another person.
>
> Instruction 13 defined "intent" as follows: "A person acts 'intentionally' or 'with intent' when his conscious objective is to cause the specific result proscribed by the statute defining the offense. It is immaterial whether or not the result actually occurred."

([#12-6] at 16.)  On direct appeal, Applicant argued "that he was prejudiced by not having counsel present for the formulation of a response to this question because the jury may have been confused about the issue of intent with regard to voluntary

intoxication." (*Id*.) The Colorado Court of Appeals determined that the trial court erred in answering the question without counsel for either party being present, but concluded that the error was harmless beyond a reasonable doubt because "there is no indication in the record that the jury was considering the issue of intoxication, and, as we concluded previously, an instruction regarding voluntary intoxication would have been inconsistent with [Applicant's] theory of defense and his trial strategy." (*Id*. at 16-17.) In addition, "the trial court adequately answered the jury's question by referring the jury to the original instruction regarding the definition of 'intent'." (*Id*. at 17.)

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Under the Sixth Amendment, a defendant is entitled to the assistance of counsel at every critical stage of a criminal prosecution. ***Kirby v. Illinois***, 406 U.S. 682, 690 (1972). "Critical stages are those steps of a criminal proceeding[] that hold significant consequences for the accused." ***United States v. Collins***, 430 F.3d 1260, 1264 (10th Cir. 2005) (citing ***Bell v. Cone***, 535 U.S. 685, 695-96 (2002)). "Thus, a defendant is entitled to counsel at any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result from the proceeding." *Id*. (citing ***Coleman v. Alabama***, 399 U.S. 1, 9 (1970)).

Assuming Applicant's constitutional rights were violated by the absence of counsel under the circumstances alleged, the Court will consider whether the violation of Applicant's constitutional right to counsel was prejudicial. "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal

trial under the 'substantial and injurious effect' standard" in **Brecht v. Abrahamson**, 507 U.S. 619 (1993). **Fry v. Pliler**, 551 U.S. 112, 121 (2007). Pursuant to **Brecht**, a constitutional error does not warrant habeas relief unless I conclude it "had substantial and injurious effect" on the jury's verdict. **Brecht**, 507 U.S. at 637. If the evidence is balanced so evenly that I am in grave doubt about whether the error meets this standard, I must hold that the error is not harmless. **O'Neal v. McAninch**, 513 U.S. 432, 436-37 (1995). I make this harmless error determination based upon a review of the entire state court record. **See Herrera v. Lemaster**, 225 F.3d 1176, 1179 (10th Cir. 2000).

Based on my review of the state court record I conclude that any violation of Applicant's constitutional right to counsel that occurred when the trial court responded to a jury question without counsel being present was harmless. First, as the Colorado Court of Appeals noted, the trial court merely referred the jury to the original instruction regarding the definition of intent, and Applicant does not contend that the instruction defining intent was deficient in any way. Furthermore, with respect to Applicant's argument that the jury may have been confused about the issue of intent with respect to voluntary intoxication, Applicant fails to rebut the presumption of correctness that attaches to the state court's factual determination that "there is no indication in the record that the jury was considering the issue of intoxication." ([#12-6] at 16-17.) Most importantly, however, any error was harmless because an instruction regarding voluntary intoxication would have been inconsistent with Applicant's theory of defense as discussed in connection with his second claim for relief. Therefore, I find that

Applicant also is not entitled to relief on claim three.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [#7] filed November 4, 2010, by Applicant Santana Peña is **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE**; and

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

Dated August 26, 2011, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge